RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 7/3/13

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| OLLIE HARRIS,<br>  Plaintiff | CIVIL ACTION<br>SECTION P<br>NO. 1:10-CV-01688 |
| VERSUS | |
| TIM WILKINSON, et al.,<br>  Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Ollie Harris ("Harris") on October 25, 2010, and amended on February 7, 2011 (Doc. 7). The sole remaining defendant is James Rials ("Rials"), the housing unit manager for the Cypress Unit at Winn Correctional Center ("WCC") in Winnfield, Louisiana.[1]

Harris contends that, on about July 10, 2010, he was in a physical altercation with his new cellmate, Brent Houston, after which Rials placed Harris in a different tier, C-2, away from Houston. (Doc. 7). Harris contends that, the next day, Houston was also transferred to tier C-2, although in a different cell from Harris (Doc. 7). Shortly after he arrived in C-2, Houston attacked

---

[1] Harris voluntarily dismissed his complaint against Warden Tim Wilkinson, Pat Thomas, and Pamela Horn (Doc. 7), and the court dismissed Harris' complaint against Officer David and Officer Hall (Doc. 11).

Harris while he was sleeping in his cell, causing severe damage to Harris' right eye as well as other less serious injuries (Doc. 7). Harris contends that Rials was aware of the situation between Harris and Houston and failed to protect Harris by ensuring they were kept separated (Doc. 7). For relief, Harris asks for monetary damages, including punitive damages (Doc. 1). Harris is presently confined in WCC.

Rials answered the complaints (Doc. 18), and filed a motion for summary judgment (Doc. 30), supported by a statement of undisputed facts and an affidavit. Harris filed a response to defendant's motion (Doc. 32). Rial's motion is now before the court for disposition.

## Law and Analysis

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such

allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Officer Rials

Harris contends that, on July 6, 2010, he was placed in the Cypress Unit with cellmate Houston (Doc. 7). On about July 10, 2010, Houston told Harris he was in love with him and made sexual advances toward him (Doc. 7). Harris and Houston then had a physical altercation in their cell, and Houston called for Rials, the housing unit manager, who sent Lt. King to the scene (Doc. 7). Lt. King removed Harris from the cell, Rials explained what had occurred to Rials, and Rials ordered that Harris and Houston be separated (Doc. 7). Harris was moved to tier C-2, away from Houston, in a cell by himself (Doc. 7). The next day, Houston had a physical altercation with another inmate and was moved from his tier and placed on tier C-2, where Harris was housed, although in a different cell (Doc. 7). About fifteen minutes after Houston was moved to Harris' tier, Officer Davis opened all thirteen cell doors on the tier for recreation; Houston immediately ran to Harris' cell, where Harris was sleeping, and clawed Harris' face with his fingernails, causing severe damage to Harris' right eye and other less serious injuries (Doc. 7).

Harris contends that Rials was aware of the situation between Harris and Houston and failed to protect Harris by failing to

ensure they remained separated (Doc. 7). Harris contends Rials intentionally caused him harm by placing them in the same housing unit the day after their altercation (Doc. 7).

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. Farmer, 114 S.Ct. at 1976-77.

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Acting, or failing to act, with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. Farmer, 114 S.Ct. at 1978.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety. Farmer, 114 S.Ct. at

1981-82. Also, <u>Hinojosa v. Johnson</u>, 277 Fed.Appx. 370, 374 (5th Cir. 2008). However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. <u>Farmer</u>, 114 S.Ct. at 1982-83.

There must be a conscious or callous indifference to the prisoner's rights. <u>Johnston v. Lucas</u>, 786 F.2d 1254, 1260 (5th Cir. 1986), citing <u>Wright v. El Paso Cty. Jail</u>, 642 F.2d 134, 136 (5th Cir. 1981). In <u>Johnston</u>, the Fifth Circuit dealt with a claim that the prison inmate classification committee had employed inadequate procedures to ensure that known enemies were kept separated. The Court found that, while each of the defendants bore some responsibility for conduct which was more than mere negligence, their conduct failed to rise to the level of deliberate indifference because none of the defendants was guilty of conscious indifference to Johnston's danger. <u>Johnston</u>, 786 F.3d at 1260.

Rials states in his affidavit (Doc. 30) that he recalls the events described in Harris' complaint, and that he ordered that Harris and Houston be separated, but he does not recall ordering that Harris be sent to a working cell-block (Tier C-2). Rials further states in his affidavit (Doc. 30) that it is WCC's policy to separate inmates who have gotten into fights, in order to prevent future fights. Rials contends in his affidavit (Doc. 30) that he would never have intentionally placed Harris and Houston

together again after their fight; inmates who have been in a fight are categorized as "enemies" or "separatees" in order to keep them separated and prevent future fights (Doc. 30). Rials contends that only he or a higher-ranking officer could have made a housing assignment and transferred Harris to Tier C-2 (Doc. 30). In his affidavit (Doc. 30), Rials appears to be under the misapprehension that Houston had already been transferred to Tier C-2 when Harris was transferred there; he does not address the decision to transfer Houston to Tier C-2 *after* Harris was transferred there.

It is not shown who made the decision to move Houston to the same tier as Harris one or two days after they were separated due to their altercation. Apparently Houston's prison record did not reflect that he must be separated from Harris. Rials argues that accidentally housing Harris and Houston in the same tier was mere negligence, which does not constitute an Eighth Amendment violation, and that assigning them both to Tier C-2 was not done intentionally.

While deliberate indifference does not include mere negligence, it does not require an intentional act on the part of the defendant. Rather, it requires Rials to have been aware of the threat to Harris' safety, and to have recklessly disregarded the risk. Rials, by his own admission, recalls having to separate Harris and Houston due to their altercation and admits they should have remained separated to prevent future fights. Rials contends

that Harris and Houston were "accidentally" housed together in Tier C-2. On the other hand, Harris contends Rials failed to ensure he and Houston remained separated by taking reasonable precautions, such as noting they were known enemies, or "separatees." Harris contends Rials' failure was intentional, or that he acted unreasonably in failing to take proper precautions to inform the staff that Houston and Harris must remained separated.

Therefore, the legal issue is whether Harris acted with deliberate indifference, or reckless disregard, to Harris' safety when he failed to note in Houston's prison file, or take some other measure to inform the prison staff, that Houston and Harris must remain separated. There is a factual issue as to whether Harris took any measures to ensure Harris and Houston remained separated. There is also a factual issue as to whether Rials acted with reckless disregard to Harris' safety if and when he failed to take reasonable precautions to ensure Harris and Houston remained separated.

Since there are genuine issues of material fact which preclude a summary judgment in this case, Rials' motion for summary judgment (Doc. 30) should be denied.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Rials' motion for summary judgment (Doc. 30) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and

Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ____ day of July 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE